**THE LAW FIRM, PLLC**
W. Alan Rose, BPR No. 28903
Derek A. Jordan, BPR No. 34299
111 N.W. Atlantic Street
Tullahoma, TN 37388
Tel: (931) 222-4010
Email: alanrose@thefirm.law
        derek@thefirm.law
*Attorneys for Kayla Massey*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| KAYLA MASSEY, as mother of J.L, a minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-00034 |
| | ) | |
| CORECIVIC, INC., CORECIVIC OF | ) | |
| TENNESSEE LLC, DAMON T. HININGER, | ) | |
| STEVEN CONRY, VANCE LAUGHLIN, | ) | |
| GRADY PERRY, ELAINA RODELLA, M.D., and | ) | |
| DOES 1-15, INCLUSIVE, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>FIRST AMENDED COMPLAINT WITH JURY DEMAND</u>

COMES NOW, Plaintiff Kayla Massey, on behalf of her minor child, J.L., by and through her undersigned attorney of record, and as for her claims of action against the above-named Defendants, alleges and shows claims for relief as follows:

### I.     BACKGROUND

1.     This is a civil rights action arising from yet another preventable death at South Central Correctional Facility ("SCCF"), a notorious prison operated by an equally infamous private prison corporation, CoreCivic. Plaintiff Kayla Massey brings this action on behalf of her minor child, J.L., whose father, Joshua Cody Lloyd, was brutally beaten to death by three other

inmates while incarcerated at SCCF. After he was brutally beaten, Mr. Lloyd complained of abdominal pain and was visibly pale, yet he received no medical attention. He died the next day, just four days after his 30th birthday.

## II.    JURISDICTION AND VENUE

2.    This action is brough pursuant to 42 U.S.C. § 1983. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343.

3.    This Court has supplemental jurisdiction to adjudicate the Plaintiff's state law claims related to the Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

4.    The venue is proper under 28 U.S.C § 1391(b)(1) because some of the Defendants reside or are located in the Middle District of Tennessee.

## III.    PARTIES

5.    Plaintiff Kayla Massey brings this claim on behalf of her minor child, J.L., whose father, Joshua Cody Lloyd, was brutally murdered while incarcerated at SCCF. Plaintiff is a resident of the State of Tennessee.

6.    Defendant CoreCivic, Inc., is a private prison company headquartered in Nashville, Tennessee that owns and operates SCCF.

7.    Defendant CoreCivic of Tennessee, LLC is wholly owned subsidiary of CoreCivic, Inc., and operates all the CoreCivic facilities in Tennessee. CoreCivic, Inc., and CoreCivic of Tennessee, LLC are hereinafter referred to jointly as "CoreCivic" or "Defendant CoreCivic."

8.    Defendant Damon T. Hininger is the Chief Executive Officer of Defendant CoreCivic, Inc. Under his direction, CoreCivic instituted policies and practices that prioritized profit over inmate safety, which resulted in the unconstitutional understaffing, misclassification

of inmates, medical neglect, and overall indifference to inmate safety and inmate-on-inmate violence at SCCF that led to Mr. Lloyd's brutal murder. Defendant Hininger was made aware of the problems at SCCF due to the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Despite this knowledge, he failed to rectify the problems at SCCF and thus implicitly authorized and approved of the conditions that led to Mr. Lloyd's brutal murder.

9. Defendant Steve Conry is the Vice President of Operations Administration at Defendant CoreCivic, Inc. He is directly responsible for ensuring that CoreCivic's facilities are adequately staffed and that staff are properly trained. Mr. Lloyd's murder is directly attributable to Defendant Conry's failed oversight and calculated, profit-driven understaffing decisions. Defendant Conry was made aware of the chronic understaffing, medical neglect, misclassification of inmates, and inmate-on-inmate violence at SCCF due to the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Despite this knowledge, he failed to rectify the problems at SCCF, and thus implicitly authorized and approved of the conditions that led to Mr. Lloyd's brutal murder.

10. Defendant Vance Laughlin is the Managing Director of Operations for CoreCivic's Division 6, which encompasses SCCF. In that role, he is directly responsible for the unconstitutional conditions at SCCF that caused the death of Mr. Lloyd. Defendant Laughlin was made aware of the chronic understaffing, medical neglect, misclassification of inmates, and inmate-on-inmate violence at SCCF due to the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Despite this knowledge, he failed to rectify the problems at SCCF, and thus implicitly authorized and approved of the conditions that led to Mr. Lloyd's brutal murder.

11. Defendant Grady Perry is the warden of SCCF. He was the day-to-day overseer at SCCF and was responsible for maintaining adequate staffing, properly classifying inmates, properly training staff, ensuring that inmates received proper medical care, and protecting inmates from inmate-on-inmate violence. Mr. Lloyd's murder is directly attributable to Defendant Perry's deliberate indifference to SCCF's unconstitutional chronic understaffing, medical neglect, and indifference to inmate safety. Defendant Perry was made aware of the chronic understaffing, medical neglect, misclassification of inmates, and inmate-on-inmate violence at SCCF due to his personal involvement in the matters, the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Despite this knowledge, he failed to rectify the problems at SCCF. Defendant Perry directly ordered the conditions that led to Mr. Lloyd's brutal murder and lack of medical care.

12. Defendant Elaina Rodella, M.D., is Defendant CoreCivic's Regional Medical Director for the area that includes SCCF and is thus directly responsible for the unconstitutional policies and practices that resulted in Mr. Lloyd receiving no medical care and dying after his brutal beating by three other inmates at SCCF. Defendant Rodella was made aware of inadequate medical care being provided to inmates at SCCF due to her personal involvement in the matter, the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Defendant Rodella is believed to have directly made the decision not to provide Mr. Lloyd with medical care following his brutal beating by three other inmates at SCCF.

13. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 15, and therefore sues said Defendants by such fictitious names. DOES 1 through 15 may be natural persons or artificial persons. Plaintiff is informed and believes and

thereon alleges that each of the fictitiously named Defendants are responsible legally in some manner for the acts, conduct, omissions, and events referred to herein.

14.     Plaintiff is informed and believes and thereon alleges that each Defendant acted at all times relevant herein as the agent, servant, employee, supervisor, co-venturer, subsidiary, and/or corporate-parent of each of the remaining Defendants. Plaintiff further alleges that the acts or omissions of any agent or employee of Defendants were done within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, subsidiary, and/or corporate-parent relationship. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when the same has been ascertained.

## IV.     FACTUAL ALLEGATIONS

### The Brutal Murder of Joshua Cody Lloyd

15.     On January 22, 2022, Joshua Cody Lloyd was brutally beaten by three other inmates at SCCF. No SCCF staff were present to prevent the attack from happening.

16.     Afterwards, Mr. Lloyd complained to SCCF staff that he was experiencing severe abdominal pain, and was described as looking visibly pale, yet he received no significant medical attention.

17.     Mr. Lloyd was last seen alive by a SCCF correctional officer on January 23, 2022, at 2:15 a.m. He was found unresponsive in his cell at 3:28 a.m., and brought to Wayne Medical Center where he was pronounced dead at 5:05 a.m.

18.     Mr. Lloyd's autopsy, attached to this Complaint as Exhibit 1, revealed he suffered numerous blunt force injuries in the attack, including:

      a.   multiple bruises on the left side of his chest, face, arms and legs;

      b.   lacerations to his spleen and lips;

c. several broken ribs; and

d. a stab wound on his upper right arm.

19. The autopsy further found that there was a half-gallon of blood (roughly half his blood supply) in Mr. Lloyd's abdomen and lists the manner of death as "homicide."

20. Mr. Lloyd was serving a sentence for non-violent drug related crimes.

21. Mr. Lloyd left behind grandparents, siblings, an aunt, uncles, and his minor child, J.L., who all cared for him deeply.

22. Plaintiff believes and alleges that Mr. Lloyd's brutal murder occurred as a direct result of the unconstitutional policies and practices of Defendants including failing to appropriately classify inmates at SCCF so that high-risk violent inmates are housed separately from nonviolent low-risk inmates such as Mr. Lloyd, failing to adequately staff SCCF to ensure that enough guards are present to prevent the type of inmate-on-inmate violence that Mr. Lloyd suffered, failing to adequately train staff at SCCF in the prevention of inmate-on-inmate violence and the adequate provisioning of medical care to inmates, and failing to provide adequate medical care to inmates at SCCF.

### CoreCivic's History of Deliberate Indifference to Inmate Health and Safety

23. Unfortunately, the brutal murder of Joshua Cody Lloyd is no anomaly. Defendant CoreCivic is notorious for placing shareholder profits over inmate safety and has paid millions in settlements across the United States due to its chronically understaffed prisons and its routine failure to provide adequate health care to the inmates in its care.

24. Defendant Hininger has repeatedly demonstrated a willingness to place CoreCivic's profits over the health and safety of its inmates. In a 2011 lawsuit filed by the American Civil Liberties Union, inmates referred to CoreCivic's Idaho Correctional Center as

"Gladiator School" because of the violent anarchy created by the understaffing at the prison. CoreCivic settled the suit by agreeing to provide minimum staff levels, but in 2013, was held in contempt of court for violating the agreement and falsifying records to misrepresent the number of guards on duty. Likewise, in 2014, the FBI investigated CoreCivic for its practice of billing for "ghost employees." Ultimately, the governor of Idaho had to order state officials to take control of the prison, and the company paid the state a million dollar fine for understaffing the prison.

25. In May of 2012, a riot at a federal prison operated by CoreCivic in Natchez, Mississippi resulted in the death of a guard and injuries to approximately twenty inmates and staff. An investigation four years later by the Office of the Inspector General ("OIG") of the U.S. Department of Justice found that the riot was the consequence of what the inmates perceived to be inadequate medical care, substandard food, and disrespectful staff members. The investigation further found the facility to have deficiencies in staffing levels, staff experience, and communication between staff and inmates. In fact, the investigation found staffing levels were lower for 19 of the 38 months following the riot than they were at the time of the riot, and that CoreCivic's own monthly reports misstated staffing levels.

26. In February of 2015, at an Oklahoma prison operated by CoreCivic, ten inmates were involved in a fight that left five with stab wounds. In June of the same year, thirty-three gang members fought with weapons causing eleven inmates to be hospitalized. In September, four inmates were killed in a riot at the same facility. Inmates alleged that gangs effectively ran the prison. An investigation by the Oklahoma Department of Corrections revealed that video footage of the September incident was deleted by CoreCivic employees. Later, two guards were indicted for bringing drugs and other contraband into the prison, and one guard was accused of

failing to act during the riot. Between 2012 and 2016, one-third of all homicides in Oklahoma prisons occurred at two CoreCivic facilities, even though they held just over ten percent of the state's prison population.

27. In 2016, CoreCivic and its directors were sued by their shareholders for mispresenting the company's practice of understaffing its prisons and failing to provide adequate medical care, which led the Federal Bureau of Prisons to cancel its business relationship with CoreCivic. Nonetheless, CoreCivic continued to provide inadequate staffing, supervision, and medical care at its facilities, including SCCF.

28. In August of 2016, the OIG found widespread deficiencies in staffing and medical care at facilities operated for the Federal Bureau of Prisons by private contractors, including CoreCivic. As a result, the Department of Justice declared that it would begin phasing out relationships with private prisons. In a separate report released in April of 2017, the OIG found widespread understaffing at a detention facility in Leavenworth, Kansas operated by CoreCivic for the U.S. Marshals Service, with vacancy levels reaching as high as twenty-three percent between 2014 and 2015. Previously, CoreCivic tried to hide the fact that it was packing three inmates into two-inmate cells at Leavenworth, contrary to prison regulations.

29. In February of 2017, a federal jury found that CoreCivic violated inmates' Eighth Amendment rights to be free from cruel and unusual punishment by being deliberately indifferent to the serious risk posed by the company's long-standing practice of understaffing the Idaho Correctional Center.

30. In December of 2017, a former guard at a facility operated by CoreCivic testified before a legislative committee that she resigned from the company after witnessing two inmates die from medical neglect during the seven months that she worked for the company. Ashley

Dixon told lawmakers that in one instance she pleaded with her superiors for three days to help a dying inmate, but to no avail, and her subsequent complaints were ignored by company officials.

31.     An audit released by the Tennessee Comptroller on January 10, 2020, found that CoreCivic had not properly recorded information about accidents, illnesses, and traumatic injuries at three of its facilities in Tennessee. It further found that one facility was missing nearly one-third of its medical and mental health personnel during two different audit periods and that homicides were two times more likely in CoreCivic facilities than state-operated facilities. In regards to SCCF specifically, the audit found that between October 2018 and January 2019, SCCF reported 67 vacant staff positions and had a staff turnover rate of 95%, the highest of CoreCivic's prisons in Tennessee. *See* Exhibit 2, pg. 289, 294.

32.     Plaintiff has attached a copy of the original complaint from *G. Marie Newby v. CoreCivic of Tennessee, LLC, et al.*, which came before this Court as Case No. 3:22-cv-00093, as Exhibit 2. Plaintiff incorporates that complaint as well as its exhibits (Dkt. #s 1-1 through 1-8) by reference as if fully set forth herein. Paragraphs 1-10 of the *Newby* complaint show how Defendant CoreCivic systematically disregarded inmate safety for the purpose of increasing profits. Paragraphs 32, 58, 69-71, 75-76, 84, and 86-87 set forth how Defendant Hininger was fully aware of Defendant CoreCivic's practice of putting profits ahead of inmate safety.

33.     Defendant Hininger further was aware of Defendant CoreCivic's policy of deliberate indifference toward inmates' medical needs based on widespread media reports of inadequate medical care at the company's facilities. *See, e.g.,* "Mexican man's widow sues over Otay Mesa jail death, says pleas for help ignored," March 23, 2017, *The San Diego Union-Tribune*, https://www.sandiegouniontribune.com/news/courts/sd-me-detention-lawsuit-20170323story.html; "Lawsuit: CoreCivic Staff Ignored Scabies Infection For A Full Year," July

31, 2017, *NewsChannel5 Nashville*, https://www.newschannel5.com/news/lawsuit-corecivic-staff-ignored-scabies-infection-for-a-full-year; "Man's death hints at wretched medical care in private immigration prisons," November 1, 2016, *The Guardian*, https://www.theguardian.com/us-news/2016/nov/01/jose-jaramillo-private-immigration-prisons-medical-care; As of 2018, CoreCivic was facing multiple lawsuits due to inadequate medical care at its largest facility in Tennessee. *See* "At Tennessee's largest prison, diabetic inmates say they are denied  insulin to 'maximize profits'," August 7, 2018, *The Tennessean*, https://www.tennessean.com/story/news/2018/08/07/corecivic-diabetic-inmates-denied insulin-trousdale-turner/925297002/.

34.     Plaintiff has attached a copy of the amended complaint from *Williams, et al., v. CoreCivic Inc., et al.*, which is pending before this Court as Case No. 3:22-cv-00571, as Exhibit 3. Plaintiff incorporates that complaint as well as its exhibits (Dkt. #s 7-1 through 7-2) by reference as if fully set forth herein. Paragraphs 28-39 of the Williams complaint detail allegations made on behalf of Joshua Williams, an inmate at SCCF who was allegedly denied access to adequate medical care and died from a drug overdose with systemic infections throughout his body.

35.     Plaintiff alleges that these incidents show that CoreCivic, its wardens, its senior officers, and its directors adopted and enforced policies and practices that demonstrated a deliberate indifference to the health and safety of inmates. Specifically, Defendants were aware of, and did not make reasonable efforts to change, policies and practices which resulted in understaffing, inadequate training of staff, misclassification of inmates, inadequate supervision of inmates, and inadequate provisioning of medical care.

*History of Inmate-on-Inmate Violence and Lack of Adequate Medical Care at SCCF*

36.     In 2010, the Tennessean reported on an investigation into SCCF after a series of inmate deaths occurred at the facility. The investigation revealed that prison officials had failed to provide adequate medical care to inmates, resulting in several preventable deaths. The Tennessean, *State Prison at Center of Lawsuits Has History of Complaints*, November 18, 2010, https://www.tennessean.com/story/news/2010/11/18/state-prison-at-center-of-lawsuits-has-history-of-complaints/92647642/.

37.     In 2012, WSMV News 4 reported on a lawsuit filed by a former inmate at SCCF alleging that he was denied necessary medical treatment for a serious medical condition, resulting in permanent damage to his health. The lawsuit also alleged that prison officials were deliberately indifferent to the inmate's medical needs. WSMV News 4, 2012, *Lawsuit Filed Against State Prison After Inmate Health Damaged*, https://www.wsmv.com/news/lawsuit-filed-against-state-prison-after-inmate-health-damaged/article_43206aa3-4d0e-59e9-b7f9-77b352d7e48a.html.

38.     In 2014, The American Civil Liberties Union of Tennessee filed a lawsuit against CoreCivic and the Tennessee Department of Correction ("TDOC") alleging that female prisoners at SCCF were subjected to unconstitutional conditions, including inadequate medical care, sexual harassment, and retaliation for filing grievances. The case was settled in 2017, with CoreCivic and TDOC agreeing to make changes to the facility and pay $1.2 million in damages to the plaintiffs. ACLU of TN, *ACLU Tennessee Reaches 1.2 Million Settlement With CCA and State in South Central Correctional Facility Case*, 2017, https://www.aclu-tn.org/aclu-tennessee-reaches-1-2-million-settlement-with-cca-and-state-in-south-central-correctional-facility-case/.

39. In 2014, WSMV News 4 reported on a lawsuit filed by a former inmate at SCCF alleging that he was attacked and beaten by a group of inmates resulting in permanent injuries. The lawsuit also alleged that prison official failed to protect the inmate from harm despite knowing he was in danger. WSMV News, *Lawsuit Filed Against Tennessee Prison After Inmate Attack*, https://www.wsmv.com/news/lawsuit-filed-against-tenn-prison-after-inmate-attack/article_25c79b8c-25c7-5f62-a6dd-3f8b2dd94458.html.

40. In 2016, an investigation by WSMV News 4 found that some inmates at SCCF were being denied access to proper medical care, which was leading to serious health consequences. In one case, a diabetic inmate was not given insulin for several days, resulting in him being hospitalized with dangerously high blood sugar levels. WSMC News 4, *I-Team Investigation Continues Into Medical Care at South Central Correctional Facility*, 2016, https://www.wsmv.com/news/i-team-investigation-continues-into-medical-care-at-south-central-correctional-facility/article_72ef2b02-0f84-11e6-9eb9-0f0e318a17de.html.

41. In 2016, an inmate filed suit against various employees of CoreCivic alleging that he was denied medication for his COPD Asthma in violation of his Eighth and Fourteenth Amendment rights. The suit was filed *pro se* and *in forma pauperis*. In screening the case pursuant to the Prison Litigation Reform Act ("PRLA"), the Court found that the inmate had sufficiently pleaded facts to make a colorable Eighth Amendment claim for deliberate indifference to his serious medical needs. *See Rucker v. Lindamood*, No. 1:16-cv-00090 (M.D. Tenn. Apr. 8, 2019).

42. In 2017, an inmate incarcerated at SCCF filed suit alleging that SCCF guards failed to protect him from an assault by gang member inmates. The inmate attributed his assault to overcrowding, inadequate staffing levels, and unspoken policies that allowed inmate gangs to

assert their authority over other inmates as a means to control the inmate population. The complaint was filed *pro se* and *in forma pauperis*. In screening the case pursuant to the PRLA, the Court found that the complaint stated a colorable Eighth Amendment claim for failure to protect against CoreCivic. The case was ultimately dismissed on mutual agreement of the parties. *See Kirk v. CoreCivic*, No. 1:17-cv-00041 (M.D. Tenn. May 25, 2017).

43. In 2018, an inmate incarcerated at SCCF filed suit alleging that SCCF guards failed to protect him from attacks by fellow inmates despite his repeated warnings that he would be attacked. The suit was filed *pro se* and *in forma pauperis*. In screening the case pursuant to the PRLA, the Court held that the inmate's Eighth Amendment failure to protect claim against CoreCivic would be allowed to proceed. The case was ultimately voluntarily dismissed. *Colbert v. Lindamood*, No. 1:18-cv-00030 (M.D. Tenn. May 29, 2018).

44. In 2019, the TDOC announced that it was investigating an incident at SCCF in which an inmate was found unresponsive in his cell and later pronounced dead. The inmate's family claimed that he had been denied medical attention and that his death was the result of neglect by prison staff. WZTV FOX 17 News, June 17, 2019, *Family Questions Tennessee Inmate's Death at South Central Correctional Facility*, https://fox17.com/news/local/family-questions-tenn-inmates-death-at-south-central-correctional-facility-06-17-2019.

45. In 2019, the Tennessean reported on a lawsuit filed by an inmate at SCCF alleging that prison officials denied him adequate medical care for a serious medical condition, resulting in his suffering and permanent injury. The lawsuit also alleged that prison officials had a pattern and practice of denying medical care to inmates. The Tennessean, 2019, https://www.tennessean.com/story/news/2019/01/24/south-central-correctional-facility-inmate-medical-care-lawsuit/2666840002/.

46. In 2020, a legally blind inmate incarcerated at SCCF filed suit alleging that SCCF employees failed to protect him from being severely beaten by other inmates. In an order affirming the report and recommendation of the magistrate judge, the Court found that the inmate's amended complaint sufficiently alleged an Eighth Amendment claim for failure to protect as to CoreCivic. The case ultimately was dismissed due to failure to prosecute and is pending appeal. *See Tarvin v. Lindamood*, No. 1:18-cv-00025 (M.D. Tenn. Jan. 30, 2020).

47. In 2021, an inmate incarcerated at SCCF filed suit alleging that SCCF employees Dr. Elaine Rodela and Dr. Keith Ivens violated his Eight Amendment rights when, after being alerted to the inmate's severe heart problems, failed to transfer him to a facility that would provide him with adequate medical care. The suit was filed *pro se* and *in forma pauperis*. In screening the complaint pursuant to the PLRA, the Court found that the complaint stated colorable claims against the defendants for their failure to provide adequate medical treatment. The case is still ongoing due to the Court's inability to locate an attorney for the inmate. *See Mayes v. Rodela*, No. 1:20-cv-00057 (M.D. Tenn. Jan. 8, 2021).

48. In 2022, an inmate previously incarcerated at SCCF filed suit alleging that after suffering from injuries sustained in an assault by another inmate, SCCF medical staff failed to provide adequate medical care when they refused to take him in for surgery as recommended by the hospital that assessed his injuries. The suit was filed *pro se* and *in forma pauperis* and was dismissed for failure to state a claim. *See Bond v. S. Cent. Corr. Facility Med. Staff*, 1:22-cv-00025 (M.D. Tenn. July 27, 2022).

49. In 2022, an inmate at SCCF filed suit alleging that SCCF guards did nothing to protect him as he was severely beaten by other inmates and that SCCF staff failed to provide him with any medical care for the injuries he sustained. The suit was filed *pro se* and *in forma*

*pauperis*. In screening the case pursuant to the PRLA, the Court held that the complaint stated a colorable failure to protect claim against the officers sued in their individual capacities. *See Perkins v. S.C.C.F. Core Civic*, 3:22-CV-00005 (M.D. Tenn. Jan. 19, 2022).

50. Plaintiff alleges that these incidents show that CoreCivic, its wardens, its senior officers, and its directors established, were aware of, and did not make reasonable efforts to change, policies and practices which resulted in understaffing, inadequate training of staff, misclassification of inmates, inadequate supervision of inmates, and inadequate provisioning of medical care to inmates at SCCF.

## V. FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – VIOLATION OF EIGTH AMENDMENT
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

51. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

52. The Civil Rights Act, as codified at 42 U.S.C. § 1983, provides as follows:

> "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

53. Pursuant to the Eighth Amendment, Mr. Lloyd, an inmate at SCCF, had a constitutional right to be free from cruel and unusual punishment during the course of his confinement at SCCF, including a right to be protected from violence committed by other inmates and to be provided with adequate medical care.

54. Defendants acting individually and together, under the color of law, acted to violate Mr. Lloyd's rights when in their operation of SCCF they failed to maintain sufficient

staffing levels to ensure that he was protected from inmate-on-inmate violence, failed to ensure that inmates were properly supervised to prevent inmate-on-inmate violence, failed to properly classify inmates to prevent inmate-on-inmate violence, failed to adequately train staff to prevent inmate-on-inmate violence, failed to provide adequate medical care for his injuries, and failed to adequately train staff in the provisioning of adequate medical care.

55.     Defendants understood their actions would result in the deprivation of Mr. Lloyd's constitutional rights as evidenced by the numerous incidents of inmate-on-inmate violence, inadequate provisioning of medical care, lawsuits, failed inspections, state audits, and public outcry that preceded Mr. Lloyd's treatment.

56.     Defendants' intentional, unreasonable, reckless, and deliberately indifferent acts were the moving force behind the violation of Mr. Lloyd's constitutional rights and his resulting death.

57.     Mr. Lloyd's rights to be protected from inmate-on-inmate violence and receive adequate medical care were well established, and reasonable persons in Defendants' position would have known or should have known that their actions would result in a violation of Mr. Lloyd's constitutional rights.

## VI.     SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 – *MONELL* LIABILITY**
**BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS**

58.     Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

59.     Defendants were directly responsible for the deprivation of Mr. Lloyd's constitutional rights as described herein and are thus subject to liability under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs of New York*, 436 U.S., 658, 691 (1978).

FIRST AMENDED COMPLAINT WITH JURY DEMAND

60. At all times material to this claim, Defendants failed to train, adequately supervise, and discipline staff regarding the appropriate segregation of violent and non-violent offenders and provisioning of adequate medical care.

61. Defendants knew of the multiple failures in policy at SCCF, as established by the instances cited herein, but nevertheless continued to operate the facility with minimal adjustments.

62. Defendants were aware of the need to supervise, train, investigate, and discipline their subordinates to mitigate unreasonable risks of harm to inmates in Defendants' custody.

63. Despite this knowledge, Defendants failed to train, supervise, or discipline individuals who engaged in these behaviors. This failure to train and supervise was a moving force behind the serious harm and violation of constitutional rights suffered by Plaintiff.

64. Defendants acting individually and collectively, engaged in, established, condoned, ratified, and encouraged customs, policies, usages, practices, patterns, and procedures that they knew would and did directly and proximately create conditions of confinement that failed to mitigate serious risks of harm and violations of constitutional rights.

65. Further, these Defendants failed to establish and maintain policies to mitigate known serious risks of harm, and these Defendants should have known that such failures would deprive people in their custody, including Mr. Lloyd, of constitutional rights.

66. Defendants were aware that the policies, procedures, practices, customs, and usages they established and those they failed to establish would result in violations of constitutional rights.

67. These policies and practices specifically included Defendants' practice of failing to adequately classify inmates or develop and implement an adequate classification plan, failing

to ensure adequate investigation into critical incidents, failing to implement corrective action plans to address the known substantial risks of harm described herein , failing to ensure staff adequately supervised inmates, failing to investigate incidents of harm, failing to provide appropriate training, disciplinary procedures, and supervision of staff, failing to ensure adequate staffing so as to encourage inmate-on-inmate violence and effectively create inhumane conditions of confinement that allowed known substantial risks of serious injury to go unmitigated, failing to follow or enforce basic jail guideline requirements, failing to establish or enforce policies regarding the proper provisioning of medical care to inmates, failing to engage in oversight sufficient to prevent constitutional rights violations, and failing to respond to obvious violations of constitutional rights of people held at SCCF.

68. These actions, and failures to act, were a moving force in the substantial risk of harm and unconstitutional conditions of confinement leading to the Mr. Lloyd's death.

69. At all times material to this claim, Defendants were acting under color of law and in the course and scope of their employment. Defendants acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional rights of Mr. Lloyd by failing to mitigate known serious risk of harm. The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the Defendants, were allowed to exist because policymakers with authority over these acts exhibited deliberate indifference to the problems, thereby effectively ratifying them.

70. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Mr. Lloyd's death.

## VII.   THIRD CAUSE OF ACTION

### NEGLIGENCE
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

71.     Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

72.     Defendants owed a legal duty of care to Mr. Lloyd to protect him from reasonable foreseeable harm and provide him with adequate medical care.

73.     Because of the instances of violence, policies, and practices cited herein, Defendants knew of or had reasons to anticipate an attack on Mr. Lloyd, but they did not use reasonable care to prevent it.

74.     Because of the instances of medical neglect, policies, and practices, cited herein, Defendants knew of or had reasons to anticipate that Mr. Lloyd would require adequate medical care, but they did not provide it.

75.     Because Defendants were made aware that Mr. Lloyd was suffering from severe abdominal pain and was visibly pale, they knew or had reasons to anticipate that he would require adequate medical care, but they did not provide it.

76.     Defendants' breaches of their duty of care to Mr. Lloyd proximately caused Mr. Lloyd to die from the brutal beating he suffered at the hands of his fellow inmates.

## VIII.   FOURTH CAUSE OF ACTION

### WRONGFUL DEATH – TENN. CODE. ANN. § 20-5-106
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDENDANTS

77.     Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Defendants owed a legal duty of care to Mr. Lloyd to protect him from reasonable foreseeable harm and provide him with adequate medical care.

79. Because of the instances of violence, policies, and practices cited herein, Defendants knew of or had reasons to anticipate an attack on Mr. Lloyd, but they did not use reasonable care to prevent it.

80. Because of the instances of medical neglect, policies, and practices, cited herein, Defendants knew of or had reasons to anticipate that Mr. Lloyd would require adequate medical care, but they did not provide it.

81. Because Defendants were made aware that Mr. Lloyd was suffering from severe abdominal pain and was visibly pale, they knew or had reasons to anticipate that he would require adequate medical care, but they did not provide it.

82. Defendants' breaches of their duty of care to Mr. Lloyd proximately caused Mr. Lloyd to die from the brutal beating he suffered at the hands of his fellow inmates.

83. Defendants' breaches of their duty of care has harmed Plaintiff in that he has lost his father and will grow up without the guidance, protection, and economic support his father would have provided.

## PRAYER FOR RELIEF

84. Wherefore, Plaintiff respectfully prays for judgment as follows:

A. For general damages plus interest, including prejudgment interest, in an amount to be determined by proof at trial;

B. For special damages plus interest, including prejudgment interest, in an amount to be determined by proof at trial;

C.    For other economic and compensatory damages, in an amount to be determined by proof at trial;

D.    For punitive and exemplary damages, including treble damages, as permitted;

E.    For costs of suit incurred herein;

F.     For reasonable attorney's fees; and

G.    For such other and further relief as this Court deems just and proper.

Dated this 29th day of March 2023.

/s/ W. Alan Rose
W. Alan Rose, BPR No. 28903
Derek A. Jordan, BRP No. 34299
THE LAW FIRM, PLLC
111 NW Atlantic Street
Tullahoma, Tennessee 37388
Telephone: (931) 222-4010
Email: alanrose@thefirm.law
        derek@thefirm.law

*Attorneys for Kayla Massey*

## <u>CERTIFICATE OF SERVICE</u>

   The undersigned hereby certifies that on March 29, 2023, a true and correct copy of the foregoing Amended Complaint was served via the Court's ECF system upon:

Nathan D. Tilly
Dylan E. Sutherland
Pentecost, Glenn & Tilly, PLLC
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305.

Dated this 29th day of March 2023.

/s/ W. Alan Rose      

W. Alan Rose, BPR No. 28903
