IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KAYLA MASSEY, as mother of J.L., a minor, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | No.: 3:23−cv−00034 |
| | ) | |
| CORECIVIC, INC., et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF NO. 15)

Defendants CoreCivic, Inc., CoreCivic of Tennessee, LLC, Damon T. Hininger, Steven Conry, Vance Laughlin, Grady Perry, and Elaina Rodela[1], by and through undersigned counsel, file this memorandum of law in support of Defendants' motion to dismiss.

## BACKGROUND & PROCEDURAL HISTORY

### A. Pertinent Procedural History

Plaintiff Kayla Massey (hereinafter, "Plaintiff") filed the above-styled lawsuit on behalf of her minor child, J.L., concerning the death of the minor's father, Joshua Cody Lloyd (hereinafter, "Decedent"), which occurred on January 23, 2022. (First Amended Complaint, ECF No. 15, ¶ 1).

On March 8, 2023, Defendants filed a Motion to Dismiss Plaintiff's original Complaint. (ECF Nos. 12 & 13). Instead of filing a response to Defendants' motion to dismiss, Plaintiff filed her First Amended Complaint on March 29, 2023. (ECF No. 15). Afterwards, the Court denied Defendants' first Motion to Dismiss (ECF No. 12) as moot on April 3, 2023. (ECF No. 16).

---

[1] Incorrectly identified in Plaintiff's original complaint and First Amended Complaint as "Elaina Rodella." (ECF Nos. 1 & 15, ¶ 12).

1

## B. Plaintiff's Allegations

At the time of his death, Decedent was incarcerated at South Central Correctional Facility (hereinafter, "SCCF"). (ECF No. 15, ¶ 1). On January 22, 2022, Plaintiff alleges that Decedent was "brutally beaten by three other inmates at SCCF." (*Id.*, ¶ 15). Afterwards, Plaintiff avers that Decedent complained to "SCCF staff" that he was experiencing "severe abdominal pain, and was described as looking visibly pale, yet he received no significant medical attention." (*Id.*, ¶ 16). Allegedly, Plaintiff was last seen alive by "a SCCF correctional officer" on January 23, 2022 at 2:15 A.M. (*Id.*, ¶ 17). Plaintiff contends that Decedent was found unresponsive in his cell at 3:28 A.M., and was pronounced deceased at Wayne Medical Center at 5:05 A.M. (*Id.*).

Decedent's autopsy, which Plaintiff attached to her First Amended Complaint (ECF No. 15-1), noted numerous blunt force injuries to his body and listed his manner of death as homicide. (*Id.*, ¶¶ 18 & 19). According to Plaintiff, Decedent was serving a sentence for "non-violent drug related crimes." (*Id.*, ¶ 20). With regard to her allegations, Plaintiff avers as follows:

> Plaintiff believes and alleges that Mr. Lloyd's brutal murder occurred as a direct result of the unconstitutional policies and practices of Defendants including failing to appropriately classify inmates so that high-risk violent inmates are housed separately from nonviolent low-risk inmates such as Mr. Lloyd, failing to adequately staff SCCF to ensure that enough guards are present to prevent the type of inmate-on-inmate violence that Mr. Lloyd suffered, failing to adequately train staff at SCCF in the prevention of inmate-on-inmate violence and the adequate provisioning of medical care to inmates, and failing to provide adequate medical care to inmates at SCCF.

(*Id.*, ¶ 22). Just like in her original complaint[2], the majority of the First Amended Complaint concerning "factual allegations" is dedicated to detailing instances of unrelated incidents at

---

[2] The only addition made to the First Amended Complaint in the paragraphs cited above states as follows: "[i]n regards to SCCF specifically, the audit found that between October 2018 and January 2019, SCCF reported 67 vacant staff positions and had a staff turnover rate of 95%, the highest of CoreCivic's prisons in Tennessee. *See* Exhibit 2, pg. 289, 294." (ECF No. 15, ¶ 31). Notably, the cited statistics are over four (4) years old.

2

CoreCivic facilities in Idaho, Oklahoma, Kansas, and Mississippi. (*Id.*, ¶¶ 23-35).[3] In her First Amended Complaint, Plaintiff additionally cites to a number of unrelated media reports and lawsuits concerning SCCF, some of which were initiated as much as thirteen (13) years before the present lawsuit. (*Id.*, ¶¶ 36-49). In a one-paragraph summation following this list, Plaintiff avers as follows:

> Plaintiff alleges that these incidents show that CoreCivic, its wardens, its senior officers, and its directors established, were aware of, and did not make reasonable efforts to change, policies and practices which resulted in understaffing, inadequate training of staff, misclassification of inmates, inadequate supervision of inmates, and inadequate provisioning of medical care to inmates at SCCF.

(*Id.*, ¶ 50).

Just as in her original complaint, Plaintiff attempts to assert the following claims against Defendants in her First Amended Complaint: (1) 42 U.S.C. § 1983 Eighth Amendment failure to protect and failure to provide medical care claims "against all Defendants," (2) 42 U.S.C. § 1983 *Monell* claims "against all Defendants," (3) a "negligence" claim "against all Defendants," and (4) a "wrongful death" claim "against all Defendants." (ECF No. 15, PageID 744-49).

For the reasons stated herein, Plaintiff's claims against Defendants should be dismissed in their entirety.

## STANDARD

A court may grant a motion to dismiss for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss, a court should not accept as true legal conclusions or unwarranted factual inferences. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). "To survive a motion to dismiss, a complaint must contain

---

[3] This portion of Plaintiff's Complaint mirrors the original Complaint filed in the matter of *John and Soynia Smith, as next kin of Addison Smith, deceased v. CoreCivic, et al.*, Case No. 3:20-cv-00563, pending in the United States District Court for the Middle District of Tennessee at Nashville, Honorable Judge Aleta A. Trauger presiding.

3

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Erie Cty. v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Rule 8 requires that in order to state a claim, a Plaintiff must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While the pleading standard of Rule 8 "does not require detailed factual allegations," it still "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 664. This standard demands that the factual allegations "raise a right to relief above the speculative level" and "nudge[] the[] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Several considerations guide whether a complaint meets the facial-plausibility standard. On one hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. On the other hand, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

I. PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT A § 1983 CLAIM AGAINST DEFENDANTS.

### A. 42 U.S.C. § 1983 claims, generally.

Section 1983 provides that "[e]very person who […] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation

4

of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law […]." 42 U.S.C. § 1983. In order to prevail on such a claim, a plaintiff "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). "Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation." *Marvaso v. Sanchez*, 2020 U.S. App. LEXIS 26723, at *14-15 (6th Cir. Aug. 21, 2020) (*citing Lamont v. New Jersey*, 637 F.3d 177, 185 (3d Cir. 2011)); *see also Imbler v. Pachtman*, 424 U.S. 409, 418 (1976) (explaining that § 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them").

In this case, Plaintiff alleges that Defendants deprived Decedent of his rights secured by the Eighth Amendment of the United States Constitution by (1) failing to protect him from "inmate-on-inmate violence," and (2) failing to provide him access to adequate medical care. (ECF No. 15, ¶ 22). To state an Eighth Amendment claim premised on a prison officials' failure to protect or failure to provide medical care, the plaintiff must allege that the prison officials acted with "deliberate indifference to the health or safety of the inmate." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). "Deliberate indifference" entails more than just mere negligence. *Cabaniss v. City of Riverside*, 231 Fed. App'x 407, 414 (6th Cir. 2007). The deliberate indifference standard is met only if the plaintiff shows that the defendants knew of and disregarded an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. *Farmer*, 511 U.S. at 837. On the other hand, a prison official who is unaware of a substantial risk of harm to an inmate may not be held liable under the

Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it. *Bishop v. Hackel*, 636 F.3d 757, 766-67 (6th Cir. 2011).

**B.** **Plaintiff has failed to plead sufficient facts to support a § 1983 claim against Defendant CoreCivic.**

A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). However, corporations such as CoreCivic "cannot be held liable under a theory of *respondeat superior*" in § 1983 claims. *Id.* at 818; *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Corporations can be found liable under § 1983 only where the corporation itself causes the constitutional violation at issue. *Id.* "It is only when the 'execution of the government's policy or custom [...] inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978). Accordingly, to prevail on a § 1983 claim against a corporation, a plaintiff must show that a policy or well-settled custom of the company was the "moving force" behind the alleged deprivation of his or her rights. *Miller v. Sanilac Cnty*, 606 F.3d 240, 254-55 (6th Cir. 2010). As enunciated by the Sixth Circuit, this requires that the plaintiff "identify the policy, connect the policy to the [corporation] itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993). At bottom, this is a causation inquiry, requiring the plaintiff to show that it was the defendant's custom or policy that led to the complained of injury. *Id.* at 363-64. The burden of proof is on the plaintiff to set forth the unconstitutional policy and link it with both the municipality and the injuries at issue. *Coogan v. Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

There are multiple ways that a plaintiff may demonstrate an illegal policy or custom, including: (1) the existence of an illegal official policy or legislative enactment; (2) that an official

6

with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Here, as will be further explained, Plaintiff has failed to assert any specific facts whatsoever to establish that Decedent's alleged constitutional deprivation(s) were directly caused by some policy, procedure, or custom of Defendant CoreCivic.

        i.       *Plaintiff's allegations that CoreCivic had a policy or custom of "understaffing" and/or "putting profits over inmate safety" fail to state a claim against CoreCivic.*

Plaintiff appears to allege that Defendant CoreCivic has adopted a company-wide policy of "understaffing" its facilities by referencing allegations of understaffing in CoreCivic facilities in Idaho, Oklahoma, Kansas, and Mississippi. (ECF No. 15, ¶¶ 24-29). Importantly, none of the alleged incidents of understaffing in those facilities occurred in the past five (5) years. (*Id*.). In her first Amended Complaint, Plaintiff has added a section titled "History of Inmate-on-Inmate Violence and Lack of Adequate Medical Care at SCCF," citing years-old news outlet and publication reports, previously-settled lawsuits, previously-dismissed lawsuits, and currently pending lawsuits as support. (*Id*., ¶¶ 36-49). Nowhere within her First Amended Complaint, however, does Plaintiff even attempt to factually connect the dots between how this miscellaneous list of largely outdated procedural and media history has anything to do with this present lawsuit. (*See* ECF No. 15). Instead, Plaintiff summarily concludes that "these incidents show" that Defendants "were aware of, and did not make reasonable efforts to change, policies and practices which resulted in understaffing, inadequate training of staff, misclassification of inmates, inadequate supervision of inmates, and inadequate provisioning of medical care to inmates at SCCF." (*Id*., ¶ 50). But these are the exact types of averments that fail to "raise a right to relief

7

above the speculative level" and "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. 544, 570. Plaintiff makes no *factual* allegations that purported "understaffing" caused or contributed to Decedent's alleged assault. (*Id*.). Instead, the First Amended Complaint merely avers that his death was "directly attributable" to "chronic understaffing" without providing any factual allegations to suggest how or why "understaffing" caused or contributed to Decedent's death. (*E.g.*, ECF No. 15, ¶ 11).

Plaintiff additionally cites two cases in supposed support of her position: *G. Marie Newby v. CoreCivic of Tennessee, LLC, et al*. (Case No. 3:22-cv-00093) and *Williams, et al., v. CoreCivic Inc., et al*. (Case No. 3:22-cv-00571). (*Id*., ¶¶ 32 & 34). In fact, Plaintiff goes so far as to attempt to incorporate by reference the allegations contained in cherry-picked paragraphs of the complaints filed in *Newby* and *Williams* and attached the same as "exhibits" to her First Amended Complaint. (*Id*.). While Defendants will not endeavor in addressing the inappropriateness of incorporating by reference complaints filed in entirely unrelated lawsuits within her First Amended Complaint, Defendants deem it necessary to briefly address Plaintiff's position.

The *Newby* matter involved allegations arising from a deceased inmate's incarceration at Trousdale Turner Correctional Center. (ECF No. 15-2, PageID 767). Not only do the allegations within the *Newby* complaint have absolutely nothing to do with the above-styled matter, it did not even occur at the same prison facility. (*Id*.). In fact, in response to an almost identical attempt to incorporate by reference the *Newby* complaint made by the plaintiffs in the matter of *John and Soynia Smith, as next kin of Addison Smith, deceased v. CoreCivic, et al.* (Case No. 3:20-cv-00563), this Court (1) noted that the *Newby* matter was dismissed with prejudice following the filing of a joint stipulation, (2) concluded that the allegations, "*including the allegations regarding Newby*, [were] not sufficient to state a deliberate indifference claim against CoreCivic under 42

U.S.C. § 1983," and (3) denied the plaintiffs' request to "incorporate by reference, in the body of their pleading or by attaching the document thereto, the complaint filed in *Newby v. CoreCivic of Tenn., LLC*, No. 3:22-cv-00093 (M.D. Tenn. Feb. 11, 2022)." (Case 3:20-cv-00563, Doc. No. 131, PageID 910 & 920 (emphasis added); Doc. No. 132, PageID 932). For the same reasons, this Court should not consider Plaintiff's attempts to incorporate complaints filed in unrelated lawsuits here.

Furthermore, in the *Addison Smith* case, this Court addressed plaintiffs' identical allegations to those Plaintiff asserts in the above-styled matter averring that CoreCivic has a policy or custom of "'putting profits ahead of the health and safety of inmates,' as purportedly demonstrated by the list of 'numerous examples that prove that point,' including the fact that CoreCivic's leadership has been sued by the company's own shareholders for neglecting inmates' safety and medical care." (Case 3:20-cv-00563, Doc. No. 67, PageID 433 (*citing* Doc. No. 16, ¶¶ 35-36); *Cf*. ECF No. 1, ¶¶ 24-29, 32, & 35). Ultimately, in response to these same allegations in *Addison Smith*, this Court already determined that a plaintiff's "reference to a lawsuit alleging that CoreCivic puts profits ahead of inmate welfare proves nothing." (Case 3:20-cv-00563, Doc. No. 67, PageID 434). This Court explained that citing a litany of lawsuits "does not provide a basis for presuming that the particular facility at issue [] [is] subject to the same shortcomings and deficiencies found at other facilities, even facilities within Tennessee." (*Id*.). Further, this Court found that the plaintiffs failed to allege facts "suggesting that SCCC specifically was or ever has been understaffed or that understaffing caused or even contributed" to plaintiffs' allegations. (*Id*.).

Plaintiff makes those same fatal errors by relying on the exact same unrelated incidents in her First Amended Complaint. Importantly, the First Amended Complaint fails to provide any factual enhancement beyond the "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" barred by *Iqbal/Twombly* concerning alleged "understaffing" and "profits first" policies. *Iqbal*,

556 U.S. at 678. Furthermore, Plaintiff asserts no factual contentions whatsoever showing that any purported understaffing actually caused Decedent's death. Accordingly, Plaintiff cannot hold CoreCivic liable for a "policy" of understaffing because she has (1) failed to allege that CoreCivic had a "policy" or "custom" of understaffing at SCCF, and (2) failed to allege facts to show that understaffing actually caused any of the alleged constitutional deprivations in this case. And Plaintiff's conclusory allegations that CoreCivic has supposedly implemented a policy of placing profits before inmates' safety also fails for the same reasons.

> ii.  *Plaintiff's allegations that CoreCivic has a policy of "deliberate indifference toward inmates' medical needs" fails to state a claim against CoreCivic.*

Plaintiff additionally avers that CoreCivic has a "policy of deliberate indifference toward inmates' medical needs based on widespread media reports of inadequate medical care at the company's facilities." (ECF No. 15, ¶ 33). In support, Plaintiff cites numerous weblinks to articles concerning unrelated incidents at other prison facilities that occurred more than four (4) years ago. (*Id.*).

A plaintiff may establish *Monell* liability by showing the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law" if that custom actually caused the constitutional violation at issue. *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The notion of "law" must include "deeply embedded traditional ways of carrying out" policy. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507-08 (6th Cir. 1996). It must reflect a course of action deliberately chosen from among various alternatives. *Id.* (*citing City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985)). In short, a "custom" is a "legal institution" not memorialized by written law. *Claiborne Cnty.*, 103 F.3d at 508.

The Sixth Circuit has held that a custom must be shown by "a clear and persistent pattern" and that offering examples of multiple discrete instances is not enough to reasonably draw such a conclusion. *Peet v. City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007) (concluding that three instances of misconduct is not enough to establish a "custom"); *Thomas v. City of Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005) (holding a plaintiff must reach beyond the facts of his case to show "several" separate incidents of the alleged rights violation to prove a "custom"); *see also Pineda v. City of Houston,* 291 F.3d 325, 329 (5th Cir. 2002) (determining that evidence of eleven incidents of unconstitutional conduct by police officers was insufficient to establish a "custom").

Importantly, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal punctuation omitted). In *Dotson*, a case decided by a sister district court within the Sixth Circuit, the court noted that allegations that a defendant "has final policy making authority," "did 'adopt and implement the policy regarding testing, treatment, education and immunization for all 'inmates incarcerated,'" and "implemented or promulgated rules and policies that cause him harm" were all insufficient to state a claim upon which relief could be granted because they did not include any factual enhancement to support such conclusions. *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 847 (N.D. Ohio 2007).

Here, Plaintiff likewise pleads no facts displaying a "a clear and persistent pattern" at SCCF of CoreCivic failing to provide adequate medical care. Instead, Plaintiff makes mention of incidents at other prison facilities, most of which were in different states and took place years ago. Moreover, as addressed above, Plaintiff articulates no connection between the unfounded news reports or settled, dismissed, or pending lawsuits cited in her First Amended Complaint and

Decedent's death. In addition, Plaintiff's attempt to once again incorporate by reference a complaint in the pending matter of *Williams, et al., v. CoreCivic Inc., et al*. (Case No. 3:22-cv-00571) is likewise factually unsupportive and procedurally improper. (ECF No. 15, ¶ 34). For the reasons addressed above, Plaintiff should not be permitted to simply engulf another litigant's allegations within her initial pleading in order to bolster unfounded claims. And importantly, the *Williams* case concerns an inmate who overdosed on drugs – an issue that has no relevance here. (*Id*.).

More importantly, Plaintiff asserts no facts to show that a "custom" of failing to provide medical care *caused* the decedent's death. Instead, Plaintiff alleges there was a "custom" – by relying on other unrelated and remote incidents without any factual support – but then never explains how said alleged "custom" led to Decedent's death. Plaintiff's references to old incidents that occurred in other states or other facilities or previous miscellaneous news reports or lawsuits concerning SCCF—some of which were dismissed—fails to plead sufficient facts to plausibly conclude (1) that CoreCivic had a policy of providing inadequate medical care at SCCF, (2) that a "clear and consistent pattern" of constitutional deprivations occurred at SCCF, or (3) that such an alleged policy acted as a "moving force" for the alleged constitutional deprivations *in this case*. Accordingly, Plaintiff's attempt to set forth a claim against CoreCivic for a custom of providing "inadequate medical care" fails.

   iii. *Plaintiff's allegations that "Defendants" failed to train their employees fails to state a claim against CoreCivic.*

Within her First Amended Complaint, Plaintiff alleges that "Defendants failed to train, adequately supervise, and discipline staff regarding the appropriate segregation of violent and non-violent offenders and provisioning of adequate medical care." (ECF No. 15, ¶ 60).

12

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train or supervise. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To state a claim for inadequate training, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Thus, to state a *Monell* claim based upon a failure to train or supervise theory, a plaintiff must plead: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Here, Plaintiff asserts no factual allegations whatsoever related to CoreCivic's training in order to base her conclusion that said training was "inadequate" – let alone facts to support a conclusion that said training amounted to "deliberate indifference." Thus, Plaintiff's allegations that Defendants "failed to train" or "adequately supervise" concerning "segregation of violent and non-violent offenders and provisioning of adequate medical care" amount to nothing more than conclusory assertions without "further factual enhancement," and do not even allege each of the elements necessary to assert liability under § 1983.

Numerous courts have found allegations like the ones Plaintiff asserts in her First Amended Complaint fall short of stating a claim. *See e.g.*, *Osberry v. Slusher*, 750 F. App'x 385, 398 (6th Cir. 2018) (holding, "A broad assertion that an unconstitutional policy exists is nothing more than a bare recitation of legal standards."); *Griham v. City of Memphis*, 2022 U.S. Dist. LEXIS 59855, at *15 (W.D. Tenn. Mar. 31, 2022) ("Plaintiffs' generalized language is insufficient to support an

13

inadequate training claim under the third *Monell* theory because it does not present 'more than a sheer possibility'); *Wright v. Louisville Metro Gov't*, 2022 U.S. Dist. LEXIS 9320, at *10 (W.D. Ky. Jan. 19, 2022) ("[T]he Complaint contains no factual allegations indicating what the training policies were, why they were inadequate, how the city was deliberately indifferent, or how the failures related to [the plaintiff's] injuries [...] [Thus,] [t]he Complaint's spare and conclusory allegations are therefore insufficient to state a claim."); *Malone v. Shelby Cty.*, 2019 U.S. Dist. LEXIS 134510, at *17-19 (W.D. Tenn. Feb. 21, 2019) ("The court finds that the complaint contains little beyond a formulaic recitation of the elements of a cause of action [...]. It only offers the legal conclusion that the City's 'failure to train and supervise their officers has become a custom that has resulted in repeated substantiated excessive abuse claims' [...]. The complaint contains no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department [...]. Nor is there any indication of a 'recurring situation[] presenting an obvious potential for such a violation' beyond plaintiffs' own alleged injuries [...]. Plaintiffs' complaint thus lacks 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' under § 1983.").

Like the plaintiffs in the aforementioned cases, Plaintiff alleges no facts related to CoreCivic's training, and she offers no facts concerning what CoreCivic's training policies were, why they were inadequate, how CoreCivic was deliberately indifferent, or how any alleged failures caused Decedent's injuries. Plaintiff's "naked assertions" that the defendants failed to "train," "supervise," or "discipline" fall well short of "nudg[ing] the[] claims across the line from conceivable to plausible." Accordingly, Plaintiff has failed to state a claim under 42 U.S.C. § 1983 against CoreCivic under an inadequate training theory.

14

iv.	*Plaintiff's allegations that "Defendants" ratified or adopted unconstitutional policies or customs fails to state a claim against CoreCivic.*

Plaintiff avers that "Defendants acting individually and collectively, engaged in, established, condoned, ratified, and encouraged customs, policies, usages, practices, patterns, and procedures" that created conditions that "failed to mitigate" risks of constitutional violations. (ECF No. 15, ¶ 64). Moreover, Plaintiff contends that CoreCivic "adopted and enforced policies and practices that demonstrated a deliberate indifference to the health and safety of inmates." (ECF *Id*., ¶ 35). Again, this is just more of the same—broad, conclusory recitals of elements tenuously attempting to support *Monell* liability.

Ratification occurs when an individual with policymaking authority issues a final decision affirming a subordinate's decision, and thereby adopts it as municipal policy. *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013). But even under a ratification theory, proximate causation remains an essential element of a § 1983 claim for damages. *See Horn v. Madison Cnty. Fiscal Ct*., 22 F.3d 653, 659 (6th Cir. 1994). Even when a plaintiff can show an official with final decision-making authority ratified a decision, the plaintiff must still "prove that the ratification was a 'moving force' in causing the constitutional violation." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citing *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991)). Thus, it logically follows that a single, isolated subsequent ratification by a policymaker is insufficient to demonstrate that the policymaker's decision was the moving force behind a constitutional violation. *Ellington*, 936 F.2d at 884-85. Instead, for ratification by a policymaker's final approval to be the "moving force" behind a constitutional violation, the plaintiff must show that there was a history or pattern of unconstitutional decision-making by the policymakers. *Id*.; *see also Alexander v. Beale St. Blues Co.*, 108 F. Supp. 2d 934, 949 (W.D. Tenn. 1999) ("Although ratification might tend to establish

15

the existence of a policy of acquiescence that in itself was a 'moving force,' mere ratification of the conduct at issue by itself cannot legally suffice as a 'moving force.'"); *Buckley v. City of Memphis*, 2004 U.S. Dist. LEXIS 7773, at \*12 (W.D. Tenn. May 4, 2004) ("Ratification occurs *after* the conduct, making the municipality's ratification of the incident in question unable to be the moving force *before* the conduct.").

Here, Plaintiff again asserts no factual support whatsoever related to CoreCivic purportedly ratifying such alleged constitutional violations at SCCF. Instead, as addressed above, Plaintiff relies on citing unrelated incidents—many of which occurred at different facilities in other states taking place years ago—as her only support. Put simply, Plaintiff has failed to plead facts evidencing a history or pattern of unconstitutional decision-making by the policymakers at SCCF. Thus, Plaintiff has failed to plead facts sufficient to support *Monell* liability under a ratification theory as well.

### C. Plaintiff has failed to sufficiently plead facts to support a § 1983 claim against Defendants Hininger, Conry, Laughlin, Perry, or Rodela.

It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by each of the named defendants. *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied,* 526 U.S. 1115 (1999); *Copeland v. Machulis,* 57 F.3d 476, 481 (6th Cir. 1995). Otherwise stated, "[b]ecause § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Taylor v. Mich. Dept. of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995).

To establish personal liability under § 1983, it must be shown that the official acted to "cause[] the deprivation of a [federal] right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The liability of supervisors cannot be based solely on the right to control employees or "simple awareness of employees' misconduct." *Leary v.*

*Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Courts have repeatedly explained that a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. *See, e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988). In other words, supervisory liability requires that there must be a direct causal link between the acts of individual officers and the supervisory defendants. *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). A plaintiff must allege that a supervisory defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002).

Based upon the above stated principles, an allegation that a defendant failed to train employees cannot give rise to § 1983 liability under an individual capacity theory. *McKinney v. McNairy Cnty.*, 2012 U.S. Dist. LEXIS 146305, at **10-11 (W.D. Tenn. Oct. 11, 2012) (citing *Harvey v. Campbell Cnty., Tenn.,* 453 Fed. Appx. 557, 563 (6th Cir. 2011)). Similarly, an allegation that supervisorial officials "adopted" or "implemented" a policy which caused a constitutional deprivation does not state a claim against the officials in their individual capacities because such an allegation by itself does not show personal involvement in the specific constitutional deprivation at issue. *See Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 847 (N.D. Ohio 2007) (finding an allegation that two directors "adopted and implemented" a policy did not state a claim against them in their individual capacities); *Jane v. Patterson*, 2017 U.S. Dist. LEXIS 55952, *20 (N.D. Ohio April 12, 2017) (finding an allegation that the defendants "established policies"

17

was insufficient to set forth a claim against them in their individual capacities). Notably, district courts within the Sixth Circuit have reiterated:

> Vague allegations, for example, that [the defendant] is liable for deliberate indifference because "the aforementioned Defendants adopted, promulgated, encouraged, condoned, and/or tolerated official customs, policies, practices, and/or procedures, including failure to train, discipline and/or supervise its employees/agents," or for "*Monell* claims" because "the above-named Defendants knew or should have known that the policies, procedures, training[,] supervision and failure to discipline the corrections officers and/or medical staff were inadequate for the tasks that each Defendant was required to perform and in fact had resulted in previous deaths and/or injuries to inmates at [the defendant's] [Jail]," are far from sufficient to state a claim against [the defendant].

*Milkiewicz v. Genesee Cty.*, 2019 U.S. Dist. LEXIS 67172, *13-14 (E.D. Mich. Apr. 19, 2019) (internal citations omitted).

While raising her contentions under the *Monell* section of the First Amended Complaint, Plaintiff seeks to hold *all Defendants* liable by alleging that (1) "Defendants failed to train, adequately supervise, and discipline staff regarding the appropriate segregation of violent and non-violent offenders and provisioning of adequate medical care"; and (2) "Defendants acting individually and collectively, engaged in, established, condoned, ratified, and encouraged customs, policies, usages, practices, patterns, and procedures that they knew would and did directly and proximately create conditions of confinement that failed to mitigate serious risks of harm and violations of constitutional rights." (ECF No. 15, ¶¶ 60 & 64).

But Defendants Hininger, Conry, Laughlin, Perry, and Rodela cannot be held liable pursuant to § 1983 under an individual capacity theory for alleged failure to train employees. *McKinney*, 2012 U.S. Dist. LEXIS 146305, at **10-11. Similarly, allegations that they "adopted" or "implemented" a policy which caused a constitutional deprivation in their supervisorial roles do not state a claim against the officials in their individual capacities because such an allegation

18

by itself does not show personal involvement in the specific constitutional deprivation at issue. *See Dotson*, 477 F. Supp. 2d 838, 847.

Plaintiff's only allegations that relate *specifically* to Defendants Hininger, Conry, Laughlin, Perry, and Rodela stem from conclusory averments that each possessed knowledge and/or were responsible for implementing supposed policies and procedures which were allegedly deliberately indifferent to Decedent and inexplicably led to his death. (ECF No. 15, ¶¶ 8-12). Tellingly, of the eighty-four (84) paragraphs contained within her First Amended Complaint, Plaintiff devotes only one paragraph each to her broad and baseless allegations against Conry, Laughlin, Perry, and Rodela, respectively. (*Id.*, ¶¶ 9-12). And Plaintiff's Amended Complaint contains no new *factual* allegations against any of the individual defendants. Instead, Plaintiff adds more conclusory bottom-lines in an attempt to keep them in this lawsuit. (*Id.*).

Specifically, as to both Conry and Laughlin, Plaintiff added to her Amended Complaint only the following:

> [Insert defendant name here] was made aware of the chronic understaffing, medical neglect, misclassification of inmates, and inmate-on-inmate violence at SCCF due to the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Despite this knowledge, he failed to rectify the problems at SCCF, and thus implicitly authorized and approved of the conditions that led to Mr. Lloyd's brutal murder.

(*Id.*, ¶¶ 9 & 10). Almost identically, with regard to Perry, Plaintiff now states

> Defendant Perry was made aware of the chronic understaffing, medical neglect, misclassification of inmates, and inmate-on-inmate violence at SCCF due to his personal involvement in the matters, the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Despite this knowledge, he failed to rectify the problems at SCCF. Defendant Perry directly ordered the conditions that led to Mr. Lloyd's brutal murder and lack of medical care.

(*Id.*, ¶ 11). While Plaintiff used the requisite turn of phrase "personal involvement" in an attempt to revamp her one-paragraph allegation against Perry, the First Amended Complaint remains

19

wholly devoid of any factual support concerning her claims against Perry, or any purported "personal involvement" on his part. (*See Id.*). Just as a for-instance, to what "matters" is Plaintiff purporting that Perry was "personally involved"? (*See Id.*). What supposed conditions did Perry "directly order"? (*See Id.*). Plaintiff does not even attempt to answer the questions begged by her conclusions. In fact, aside from the style of her filing, Perry is not mentioned even once outside of paragraph eleven (11) of her First Amended Complaint. (*See* ECF No. 15).

Similarly, with regard to Rodela, Plaintiff added only the following:

> Defendant Rodella [sic] was made aware of inadequate medical care being provided to inmates at SCCF due to her personal involvement in the matter, the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Defendant Rodella [sic] is *believed* to have directly made the decision not to provide Mr. Lloyd with medical care following his brutal beating by three other inmates at SCCF.

(*Id.*, ¶ 12) (emphasis added). Again, this is the only paragraph in Plaintiff's First Amended Complaint even mentioning Rodela. Nowhere within her First Amended Complaint, does Plaintiff even attempt to articulate how Rodela was in any way "personally involved" in "the matter." (*Id.*).

Nearly identically, Plaintiff has added only the following regarding Hininger:

> Defendant Hininger was made aware of the problems at SCCF due to the news articles, lawsuits, and the Tennessee Comptroller Audit cited below. Despite this knowledge, he failed to rectify the problems at SCCF and thus implicitly authorized and approved of the conditions that led to Mr. Lloyd's brutal murder.

(*Id.*, ¶ 8). Plaintiff's only additional mention of Defendant Hininger beyond her initial conclusory paragraph concern his alleged awareness of CoreCivic's purported policy of putting profits before inmate safety and "widespread media reports of inadequate medical care at the company's facilities," which Defendants have addressed above. (*Id.*, ¶¶ 8, 24, & 32-33).

Put simply, these very limited additional averments are just more of the same—conclusory, unfounded recitals of legal elements tenuously attempting to support a claim without any factual enhancement whatsoever. And while the First Amended Complaint certainly contains more words,

it does not contain any more factual enhancement than its predecessor. Plaintiff has made abundantly clear not only that she has failed to state a claim against any of the individual defendants in either of her complaints, but that when given an opportunity to remedy the deficiency of her factual allegations *after* being presented with Defendants' first motion to dismiss and its almost identical procedural and substantive criticisms, she remained *unable* to provide additional factual averments necessary to support a claim against Defendants Hininger, Conry, Laughlin, Perry, or Rodela.

Indeed, the general and broad allegations asserted within her First Amended Complaint fail to state any facts sufficient to show *any* personal involvement whatsoever concerning Decedent's death or alleged lack of adequate medical care on the part of Defendants Hininger, Conry, Laughlin, Perry, or Rodela. In fact, when faced with nearly identical allegations against Hininger in the *Addison Smith* matter—which also mirror the allegations against Hininger, Conry, Laughlin, Perry, and Rodela in the above-styled lawsuit—this Court already determined that such averments in the plaintiffs' first amended complaint were "devoid of any allegations that the CEO of CoreCivic had any personal involvement in, or knowledge of, the specific events at issue in this case […]." (Case 3:20-cv-00563, Doc. No. 67, PageID 418 & 419). Additionally, when presented with arguably more specific allegations against Perry in the *Addison Smith* matter, this Court likewise found that plaintiffs failed to assert facts to support individual supervisory liability against Perry. (*Id.*, PageID 418 & 423-25). As a result, this Court dismissed the § 1983 claims against both Hininger and Perry. (*Id.*, PageID 425).

As the plaintiffs failed to do in *Addison Smith*, Plaintiff fails to allege what Defendants Hininger, Conry, Laughlin, Perry, or Rodela did or did not do, what each specifically knew or did not know, or how any of them (or which of them) were even involved in adopting or implementing

CoreCivic's alleged inadequate policies. For instance, in the lone paragraph of the First Amended Complaint mentioning Rodela, Plaintiff avers summarily without factual support that Rodela, as Regional Medical Director of SCCF, was "directly responsible for the unconstitutional policies and practices that resulted in Mr. Lloyd receiving no medical care and dying after his brutal beating by three other inmates at SCCF." (ECF No. 15, ¶ 12). Importantly, Plaintiff does not aver that Rodela ever treated Decedent, encountered Decedent on January 22, 2022 or January 23, 2022, or even that Rodela was made aware of the alleged incident at any point. (*Id.*).

Plaintiff's allegations concerning Defendants Hininger, Conry, Laughlin, Perry, and Rodela fall well-short of asserting a plausible conclusion that any of them "authorized, approved, or knowingly acquiesced" in any alleged unconstitutional conduct of any unidentified SCCF employee, nor do such allegations support a conclusion that any of the individually-named Defendants acted with deliberate indifference towards Decedent at any time. In short, Plaintiff failed to plead actual underlying facts and averred only conclusory recitals of the elements to tenuously attempt to support her § 1983 claims. Without more, Plaintiff failed to meet *Iqbal* and *Twombly's* pleading standards, and therefore, failed to state a claim against the individual Defendants. Accordingly, Plaintiff's § 1983 claims brought against Defendants Hininger, Conry, Laughlin, Perry, and Rodela must be dismissed.

II.    THE COURT SHOULD DISMISS PLAINTIFF'S REMAINING STATE LAW CLAIMS BROUGHT AGAINST DEFENDANTS.

Plaintiff also asserts claims for "negligence" and "wrongful death" under Tennessee law, attempting to invoke the Court's supplemental jurisdiction. (ECF No. 15, ¶¶ 71-83). However, Plaintiff again alleges no further facts to support her state law claims.

Whether the claim asserted is a state law or federal claim, the "sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible

inference of wrongdoing." *16630 Southfield Ltd. Partnership v. Flagstar Bank*, F.S.B.,727 F.3d 502, 504 (6th Cir. 2013). "A plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law." *Id.* This requirement is in place to "prevent[] plaintiffs from launching a case into discovery—and from brandishing the threat of discovery during settlement negotiations—when there is no reasonable likelihood that they can construct a claim from the events related in the complaint." *Id.* (*citing Twombly*, 550 U.S. at 558).

In Tennessee, to properly allege a negligence claim, a plaintiff must set forth the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation. *See e.g.*, *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). It is well-settled that a person is not liable for the acts or negligence of another, unless the relation of master and servant or principal and agent exist between them. *See*, *e.g.*, *International Harvester Co. v. Sartain*, 32 Tenn. App. 425, 450 (Tenn. 1948).

Accordingly, in order for Plaintiff to assert that each of the defendants are liable in this case, she must allege how each specific defendant took actions that could constitute negligence or how each defendant could be held vicariously liable for the negligent actions of another. Based upon the allegations in her First Amended Complaint, Plaintiff falls well-short of doing either. Instead, Plaintiff avers only that *all Defendants* "knew of or had reasons to anticipate an attack on Mr. Lloyd, but they did not use reasonable care to prevent it," and that *all Defendants* "were made aware that Mr. Lloyd was suffering from severe abdominal pain and was visibly pale, they knew or had reasons to anticipate that he would require adequate medical care, but they did not provide it." (*Id.*, ¶¶ 73, 74, 79 & 81). Importantly, nowhere within her First Amended Complaint does

Plaintiff allege any facts to support that *any* of the individual defendants (1) had reason to "anticipate an attack on" Decedent at any time, or (2) "were made aware that Mr. Lloyd was suffering from severe abdominal pain and was visibly pale." In fact, Plaintiff contends only that Decedent purportedly complained to unidentified "SCCF staff," and that he was supposedly last seen alive by "a SCCF correctional officer." (*Id.*, ¶¶ 16 & 17).

Moreover, Plaintiff's barebones allegations that Decedent complained to unidentified "staff" is not sufficient to place liability on CoreCivic. Plaintiff never alleges specifically to whom he made such a complaint, when he did, or even exactly what that unidentified staff member did or did not do in response. In other words, he has not alleged any facts to plausibly show that any staff member breached any duty to Decedent or that any alleged breach caused Decedent's death.

Accordingly, Plaintiff's state law claims against Defendants should be dismissed.

III. TO THE EXTENT PLAINTIFF HAS BROUGHT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES, SUCH CLAIMS ARE REDUNDANT AND SHOULD BE DISMISSED.

It is unclear whether Plaintiff intended on bringing claims against the individual defendants in their official capacities. To the extent she did so, such claims should be dismissed. It is well-settled that official capacity claims against individual defendants are really claims against the defendant corporation. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Official capacity suits represent only another way of pleading an action against an entity of which an officer is an agent and where an entity is named as a defendant, an official-capacity claim is redundant. *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014). In such a situation, courts have held that the official capacity claim should be dismissed because there is no need to maintain an official capacity suit when the entity is also named as a defendant. *Foster*, 573 Fed. Appx. at 386; *See also*, *Jenkins v. Hardeman County*, 2013

U.S. Dist. LEXIS 146650, 5 (W.D. Tenn. Oct. 10, 2013). Thus, if this Court allows any claims to proceed against CoreCivic, the Court must dismiss all official capacity claims brought against Defendants Hininger, Conry, Laughlin, Perry, and Rodela.

IV. ALL CLAIMS CONCERNING "DOES 1 THROUGH 15" MUST BE DISMISSED BECAUSE THE APPLICABLE STATUTES OF LIMITATIONS HAVE RUN.

Any claims brought against "DOES 1 through 15" should be dismissed because the applicable statutes of limitations have run. The applicable statutes of limitations for claims under § 1983, negligence, and wrongful death suits are one year. *See* TENN. CODE ANN. § 28-3-104(a)(3) (statute of limitations for claims brought under the federal civil rights statutes is one year); *Sullivan ex rel. Wrongful Death Beneficiaries of Sullivan v. Chattanooga Med. Inv'rs*, 221 S.W.3d 506, 508 (Tenn. 2007) ("The statute of limitations for personal injuries, including wrongful death actions, is governed by TENNESSEE CODE ANNOTATED 28-3-104(a)(1), which provides that the action shall be commenced within one year after it has accrued."). Furthermore, the filing of a complaint against unnamed defendants does not toll the running of the statute of limitations against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996), *cert. denied*, 519 U.S. 821, 117 S. Ct. 78, 136 L. Ed. 2d 37 (1996); *Bufalino v. Mich. Bell Tel. Co*., 404 F.2d 1023, 1028 (6th Cir. 1968), cert. denied, 394 U.S. 987, 89 S. Ct. 1468, 22 L. Ed. 2d 763 (1969). Here, more than a year has passed since the alleged incident occurred on January 23, 2022, and none of the fifteen (15) unnamed doe defendants have been identified. Therefore, any claims against "DOES 1 through 15" should be dismissed.

## CONCLUSION

Based upon the foregoing and the entire record in this cause, Plaintiff's claims against Defendants should be dismissed in their entirety.

Respectfully submitted,

PENTECOST, GLENN & TILLY, PLLC

By:    s/Nathan D. Tilly
        Nathan D. Tilly (#031318)
        Dylan E. Sutherland (#040648)
        *Attorneys for Defendants*
        162 Murray Guard Drive, Ste. B
        Jackson, TN  38305
        Phone: (731) 668-5995
        Fax:   (731) 668-7163
        ntilly@pgmfirm.com
        dsutherland@pgmfirm.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document

was served via US District Court ECF system and/or U.S. Mail postage prepaid upon:

W. Alan Rose
Derek A. Jordan
*Attorneys for Plaintiff*
THE LAW FIRM, PLLC
111 NW Atlantic Street
Tullahoma, Tennessee 37388

DATE:  On this the 10th day of April, 2023.

PENTECOST, GLENN & TILLY, PLLC

By:    s/Nathan D. Tilly
        Nathan D. Tilly